CASE No. 963.

STATE v. DAVID.

1. One convicted of murder moved at the same term for a new trial, upon the ground of insufficiency of evidence, which motion was overruled, and sentence was passed. At a subsequent term, but before execution of the sentence, this defendant moved for a new trial upon affidavits of after-discovered evidence, which motion was refused, upon the ground that there was no power to grant it. *Held*, that the Circuit Court did possess this power, but that it should be exercised with great caution.

2. Appellant having waived the right to be present in this court at the hearing of his appeal—*Held*, that his presence was not necessary.*

---

Before MACKEY, J., Abbeville, October, 1880.

At the request of the defendant's counsel, this court heard this appeal in the absence of the prisoner. The case is fully stated in the opinion.

*Mr. W. C. Benet*, for appellant.

*Mr. Solicitor Cothran*, contra.

* See *State* v. *Gill, ante p.* 410.

January 10th, 1881.    The opinion of the court was delivered by

SIMPSON, C. J.    The appellant, Jeff David, at a special term of the Court of General Sessions for Abbeville county, April, 1878, stood charged with murder.    He was tried and found guilty.    Before sentence his counsel made a motion for a new trial on the ground of insufficiency of evidence.    The motion was refused and the appellant was sentenced to be hanged on May 17th, 1878.

The execution of this sentence has been stayed by executive clemency until now; the last respite fixes the day of execution upon March 18th, 1881.

In October, 1880, a motion was made before Judge Mackey, in General Sessions, at Abbeville, for a renewal and rehearing of the motion for a new trial, Judge Mackey having presided at the session of the court when the appellant was convicted.    This last motion was made on the ground of after-discovered evidence. Upon the hearing of this motion Judge Mackey passed the following order:

"A motion for a new trial in the above case having been made before me by the defendant, on the ground of after-discovered evidence, and argument of defendant's counsel and of the solicitor for the state having been heard thereon:

"It is ordered, that although on the strength of the affidavits of after-discovered evidence submitted by defendant's counsel, I should grant the motion for a new trial if I had the power to do so, the motion is hereby refused, because I conceive that I have not the power to grant it in the case stated.

  (Signed)      "T. J. MACKEY,
              " *Presiding Judge.*

"October 20th, 1880."

The defendant, by his attorney, Mr. W. C. Benet, appealed on the ground that the Circuit judge erred as to a matter of law in holding that he had no power to grant a new trial in the case stated; at the same time stating in his order that if he had the power, upon the affidavits submitted, he would grant the motion.

The only question raised in the appeal is this: Was there

error of law on the part of the Circuit judge in holding that he had no power to grant the motion? Whether the affidavits submitted by the appellant, on his motion, were sufficient to call for the exercise of this power is not involved here, nor could it be reviewed if it were; but the question is, admitting that these affidavits were sufficient for this purpose, had the power of the judge been exhausted in his refusal of the first motion at the trial, and from which there had been no appeal?

Formerly, in this state, the Circuit judges had no power to hear motions for new trials. These motions were made before the Appeal Court, which court alone was invested with this power. Since the adoption of the present constitution, however, the grant of power therein to the present Supreme Court does not embrace the hearing of such motions. The power to hear motions for new trial is, in its nature, an appellate power, and appellate jurisdiction is expressly denied to the Supreme Court by the constitution, except as to cases in chancery. *State* v. *Bailey*, 1 *S. C.* 1.

While this is true as to the Supreme Court of this state, yet the Circuit Courts are invested with full powers on this subject. It belongs to these courts as an incident to their original jurisdiction, and, besides, by act of general assembly, (14 *Stat.* 136), it is expressly declared " that Circuit Courts shall have power to grant new trials in all cases where there has been a trial by jury, for reasons for which new trials have usually been granted in courts of law of the United States."

The act of 1869 (*Gen. Stat.* 497), which prescribes the mode for vacating erroneous judgments and the time within which motions may be made for this purpose, has no application to criminal cases; it is confined in its terms to judgments and decrees rendered by the Court of Common Pleas.

Before the amalgamation of the two courts of law and equity in this state each of these courts had power under certain circumstances to set aside judgments and decrees and to grant trials *de novo;* not strictly by motion for new trials, but upon other principles in the nature of a bill of review and rehearing for after-discovered testimony. The mode of procedure in these courts being different after the adoption of the constitution of

1868, all the power of the two courts was, by that constitution, vested in the Court of Common Pleas, and the act of 1869, *supra*, seems to have been passed to provide a uniform mode of procedure in such cases, so that now, since that act, erroneous judgments and decrees, which formerly had to be assailed according to the forms in use in the respective courts, may be vacated on motion in the Circuit Courts under the provisions of the act of 1869, provided that the motion is made within two years after the rendition of the judgment assailed ; but this act, as has already been stated, has no application to criminal cases. The power of the Circuit Courts to grant new trials in criminal cases comes directly from the act of 1868, *supra*, and also as an incident to its original powers. *State* v. *Bailey, supra.*

The Circuit judge, in this case, gives no reason in his order why, in his judgment, he was without power in the premises. The only facts which distinguished this case from others where motions for new trials have been heard and granted are, *first*, this is a second motion after the refusal of the first ; and, *second*, this is made after sentence.

Generally motions for a new trial must be made upon the minutes of the court and before the adjournment of the court at which the trial was had, or before sentence or judgment, or upon a case made up and settled by the judge who tried the case, and, when once thus heard, it is final. The order in such case cannot afterwards be reviewed either by the judge himself, who heard it, or by another judge. These motions, however, are made upon matters growing out of the trial, and as to facts occurring at the trial, and, when once passed upon, the action of the court is conclusive, unless an error of law is involved, giving a right of appeal to this court.

But in the courts of law of the United States a party may, under certain circumstances, become entitled to a new trial on account of newly-discovered testimony; the ground being that the facts upon which he now relies are external to those which transpired at the trial.

Can this appellant be cut off, then, from the opportunity of availing himself of this testimony because, at the time of his conviction, he moved for a new trial on the then existing facts,

and, failing in that, sentence had been pronounced against him? If this be so, the right of a new trial on the ground of after-discovered testimony is a delusion and a snare. It is a promise to the ear, but broken to the hope. If this be so, the only possible case in which such testimony could be made available would be where the party had waived his motion at the trial.

The right to a new trial on newly-discovered testimony, when sufficient, is as fully settled and guaranteed by the law as any other, and this right cannot be lost because a new trial had once been refused upon facts wholly different from and not involving this newly-discovered testimony.

It is true, as a general rule, such applications come too late if made after judgment, but it is within the discretionary power of the court still to hear, even after judgment entered, and even after the judgment has been affirmed on appeal. *McMicken* v. *Webb*, 6 *How.* 293. If this is so in civil cases, how much more important is it in criminal cases, involving liberty and life. There can be no doubt that motions of this sort should be received with the utmost caution, because, as it is said by a learned judge, there are but few cases tried in which something new may not be hunted up, and also because it tends to perjury; and, as was said in the case of *State* v. *Harding*, 2 *Bay* 268, it would have a mischievous tendency after all the evidence on the part of the state had been fully disclosed to allow one with his life in danger an opportunity, by the assistance of confederates, to procure unprincipled witnesses to contradict the evidence on the part of the state, and thereby defeat the ends of justice; but this case does not involve the discussion of the facts and principles which should control the court on motions of this kind.

The only question involved is the existence of this power; if it exists, no doubt it will be exercised wisely and discreetly. Our judgment in this case may be of no practical benefit to the appellant, but the case has come up in the regular channel of appeal, and it has become our duty to decide the questions of law involved. It is our opinion that the Circuit Court has discretionary power to hear and determine motions of the kind made in this case, and, therefore, that the Circuit judge was in

error when he refused the motion on the ground of the want of legal power; and it is so adjudged.

At the hearing of this case, the appellant being absent, the question was raised whether his presence was necessary; the court ruled that the hearing might proceed without the presence of the prisoner. As this is a departure from the practice heretofore obtaining in this state, although not embraced in the appeal, it may not be improper for the court to state briefly the grounds of this ruling. The practice of having the prisoner in cases of felony present in the appellate court was because of the ancient practice and precedents in the English courts. This practice grew up in England because a person indicted for felony could not at common law appear by attorney or counsel. Therefore his presence was always required in every stage of the proceedings.

In the United States a different system prevails. In all criminal cases and in all the courts the accused is entitled to counsel. In this state he is entitled, by Article I., Sec. 13, of the constitution, to be fully heard in his defence by himself or by his counsel, or by both; and if he claimed the right to be present and be heard in his defence, he would be entitled to that privilege, but his personal presence is not necessary in this court as a condition precedent to the hearing of such questions as may be raised here by appeal.

In *Commonwealth* v. *Castello*, 121 *Mass.* 371, indictment for forgery, it was held that a defendant in a criminal case had no right to be personally present at the hearing of a motion on his behalf for a new trial, and his absence would not invalidate sentence subsequently passed upon him. See also 2 *Dutcher* 605, where the same doctrine in substance is held.

The court therefore deemed it unnecessary in this case for the prisoner to be personally present.

McIVER and McGOWAN, A. J.'s, concurred.