15639

LANFORD v. CLINTON COTTON MILLS *ET AL.*

(30 S. E. (2d), 36)

424

December-
ber, 1943.

*Messrs. Blackwell, Sullivan & Wilson,* of Laurens, S. C., and *Mr. Stephen Nettles,* of Greenville, S. C., Counsel for Appellants,

*Mr. W. H. Nicholson* and *Mr. W. H. Nicholson, Jr.,* both of Greenwood, S. C., Counsel for Respondent

April 13, 1944.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court:

This is an appeal from the Court of Common Pleas of Laurens County, South Carolina, arising out of the following statement of facts:

On February 3, 1943, while employed by Clinton Cotton Mills, Clinton, S. C., the claimant, Grover P. Lanford, had a fight with one Lindsey Heaton, and Heaton bit off a portion of one of Lanford's ears.

Lanford filed a claim with the South Carolina Industrial Commission, under the Workmen's Compensation Act, for serious head and facial disfigurement. A hearing was held before Commissioner Isaac L. Hyatt at Clinton on April 19,

1943, and on May 24, 1943, Commissioner Hyatt filed his opinion and award in favor of the claimant in the amount of $2,000.00. The defendants petitioned for review and same was had on June 24, 1943, and in an opinion filed on September 14, 1943, the full commission filed the opinion and award, holding that the hearing commissioner had correctly decided the questions at issue and adopting his award.

The defendants then appealed to the Laurens County Common Pleas Court, and the appeal was heard by Hon. G. Dewey Oxner, Presiding Judge, who filed an opinion and order on December ——, 1943, affirming the award below. Within due time the defendants gave due notice of intention to and do now appeal to the Supreme Court from said order upon the following exceptions:

1. Under the applicable law and the evidence the only proper conclusion was that the injury sustained by the claimant was not an accident within the meaning of the Workmen's Compensation Act.

2. Under the law and the evidence the only proper conclusion was that the injury to claimant did not arise out of the employment.

3. Under the law and the evidence the only proper conclusion was that Heaton was not a dangerous man, and even if he was, there was no evidence to show that the employer was chargeable with notice of that fact.

4. The evidence was insufficient as matter of law to sustain an award for the claimant.

It is now well-established law in this State that where claim is made under the Workmen's Compensation Act, the Industrial Commission is the fact-finding body and this court has a right to review the testimony for the purpose only of ascertaining whether or not there is any competent evidence to support the findings of the Industrial Commission. If there is, then such findings are binding upon the Common Pleas and Supreme Courts of this State. *Cokeley v. Robert Lee, Inc.*, 197 S. C., 157, 14 S. E. (2d), 889;

*Tedars v. Savannah River Veneer Co.,* 202 S. C., 363, 25 S. E. (2d), 235, 147 A. L. R., 914; *Westbury v. Heslep & Thomason Co.,* 199 S. C., 124, 18 S. E. (2d), 668; *Smith v. Southern Builders,* 202 S. C., 88, 24 S. E. (2d), 109; *Strawhorn v. J. A. Chapman Const. Co.,* 202 S. C., 43, 24 S. E. (2d), 116.

The first exception deals with whether or not the injury complained of arose out of an accident within the meaning of the Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.*

The term accident as used in the Workmen's Compensation Act has been defined as an unlooked for and untoward event which is not expected or designed by the person who suffers the injury. *Thompson v. J. A. Jones Const. Co.,* 199 S. C., 304, 19 S. E. (2d), 226; L. R. A., 1916-A, 227.

While a willful assault may be said not to be an accident so far as the aggressor is concerned, to him, who is not the aggressor, there exists the unexpected factor necessary to constitute an accident as contemplated by Workmen's Compensation laws. 71 C. J., 581-584.

Considering the testimony of Mr. James H. Hill, who was familiar with all phases of the difficulty, in that he carried the message to Mr. Heaton for Mr. Lanford that "A fellow told me to tell you that he was going to bring some more crankshafts," and that of Mr. Heaton, we find the following:

"Q. What was Mr. Lanford doing with Mr. Heaton? A. He started towards him. When he run up, you know, he locked his arms around him.

"Q. Well, Mr. Heaton had thrown the hammer at him? A. Yes, sir. He had already thrown the hammer.

"Q. Mr. Lanford did nothing to bring on this, did he? A. No, sir.

"Q. Not a thing in the world? A. No, sir.

"Q. Did he throw his arms around his front or back? A. He had one arm around his neck and one around his waist, as far as I could remember.

"Q. And he just bit his ear off? A. Yes, sir.

"Mr. Heaton testified to the following: Q. What, in your opinion, tell the Court what caused this fight? A. Well, I just don't know. I fully believe that Mr. Lanford was in a funny way, but he came at me in such a way, and used the words, that it just run all over me, somehow or other."

In the instant case, there is conflicting testimony as in most assault cases, but there is ample evidence to support the findings of the hearing commissioner (and subsequently the full Commission) to the effect that claimant was not the aggressor and since that body is the fact-finding body, this court will not disturb the findings of the Commission so long as there is competent evidence to support such findings.

The appellant strenuously argued that claimant is the aggressor because of his having sent Hill to deliver the message to Heaton (there is a conflict in the testimony of Hill and Heaton as to just what this message was), which was for the purpose of teasing Heaton. Whether it was made in jest or all seriousness it must be considered as to whether or not it produced an effect which does not ordinarily follow and cannot be reasonably anticipated from use of means adopted, or an effect which the actor did not intend to produce and which he cannot be charged with the design of producing. *Cole's Next of Kin v. Anderson Cotton Mills,* 191 S. C., 458, 4 S. E. (2d), 908.

Under the Workmen's Compensation Act, provision defining "personal injury" word accident refers to the cause of the injury and is an unlooked for mishap or untoward event which is not expected or designed by the person who suffered the injury and it implies that there was an external act or occurrence which caused the injury

or death and contemplates an event not within one's foresight and expectation and may be due to purely accidental causes or may be due to oversight and negligence, carelessness, not willful, to fatigue or to miscalculation of effects of voluntary action. *Green v. City of Bennettsville,* 197 S. C., 313, 15 S. E. (2d), 334.

The court is of the opinion that there is evidence to support the findings of the Commission that this was an accident within the meaning of the Workmen's Compensation Act; therefore, this exception is overruled.

The second exception is that the injury complained of did not arise out of the employment of the claimant. No question is raised as to whether or not the injury arose in the course of such employment and since the term "in the course of" fixes the time of such injury and the testimony clearly shows that the claimant was employed by the Clinton Cotton Mills at the time of injury, this court will confine itself to the question of whether or not the injury "arose out of" the employment of claimant.

Claimant was employed as a loom fixer in the weave room and as such it was his duty to keep the looms in good repair, carrying defective or worn parts to the machine shop to have them repaired. Mr. Heaton was employed in the machine shop as a machinist's helper and it was his duty to repair such parts as the loom fixers brought to him to be repaired.

Mr. Lanford testified as follows:

"Q. When you had a crankshaft, you had to take it over to him (Heaton) to have it fixed? A. Yes, sir.

"Q. It was your duty? A. Yes, sir. That was his job, to fix the crankshafts.

"Q. He had one of your crankshafts there at the time? A. I had worked an extra shift, and I taken out one of the crankshafts, that was laying on the floor.

"Q. Were you both working? A. We both were working for the Clinton Cotton Mill. ·

"Q. You were working at the time he jumped on you? A. Yes, what I mean though, I didn't know why he done it.

"By Mr. Wilson:

"Q. There is no question but what it happened while you were being employed. We agree about that. You were employed? A. Yes, sir; that's right.

"Q. And this happened during the course of your employment? A. That's right.

"Q. But the point I am asking about again, it didn't happen ·because of that employment and out of the work that you were doing? You don't know how it happened, do you? A. No, I don't know why it happened. The man could have went crazy as far as I know.

"By Mr. Nicholson:

"Q. If you hadn't of been working there, would it have happened? A. No, it wouldn't have happened.

"Q. Then, I'll ask you to state whether or not it was due to the fact that you worked, rather than you were injured? A. How is that?

"Q. Whether it was due to the fact that you were working there that you were injured? A. Yes, sir."

In response to inquiry by the court, Mr. Lanford further testified:

"Q. You say you were about your work? You were in the mill, and over the mill, were you not? A. Yes, sir. You see, we have a breakdown of anything, we have to go to the machine shop.

"Q. And you went to the machine shop and sharpened your drill and you were coming back when all this occurred? A. Yes, sir.

"Q. You were going back to your accustomed place of work in the mill? A. Yes, sir."

Mr. Lindsey Heaton testified as follows:

"A. My job is to fix crankshafts, to wait on loom fixers, wait on other section men that come in, and fix their pieces. All such as that. In other words, a general machinist helper. That is the way I am on the payroll, as a machinist's helper. Well, I fixed all of the crankshafts, so that morning—

"Q. What, in your opinion, tell the Court what caused this fight? A. Well, I just don't know. I fully believe that Mr. Lanford was in a funny way, but he came at me in such a way, and used the words, that it just run all over me, somehow or other.

"Q. But I believe you say that it didn't arise out of the work? A. No, 'sir.

"Mr. Nicholson: Let him tell it, not you.

"Q. Did it or not arise out of the work? A. No, sir; nothing more than it started him a going on at me about some crankshafts, and I ought to fix them right. Now, he said the same thing to me. 'You fix them right,' just in a joking way, if you would fix them right, they would run better.' Well, I wasn't responsible for them a breaking or nothing like that."

In determining whether an accident arose out of and in the course of employment each case must be decided with reference to its own attendant circumstances. *Gallman v. Springs Mills,* 201 S. C., 257, 22 S. E. (2d), 715.

The above statement of Mr. Heaton clearly shows that the controversy arose out of the repair of crankshafts, and that complainant's work had to do with carrying crankshafts and other parts to Heaton in the machine shop, where the altercation occurred, to have them repaired. An accident arises out of the employment within the meaning of the Workmen's Compensation Act when it arises because of employment and in dealing with the scope of employment of employee, the terms of which are not usually in writing, the Workmen's Compensation Act should be

construed with reasonable liberality. *Johnson v. Merchant's Fertilizer Co.,* 198 S. C., 373, 17 S. E. (2d), 695; *King v. Wesner,* 198 S. C., 49, 16 S. E. (2d), 289.

There is some testimony to the effect that the injury "did not arise out of the employment," but that is a conclusion which only the courts could arrive at and not the witness.

The court is of the opinion that there is sufficient evidence to warrant the findings of the ndustrial Commission that such injury arose out of his being employed by the Clinton Cotton Mills and therefore this exception cannot be sustained.

Exception three has to do with whether or not Heaton was a dangerous man and if he was, then whether or not the employer had or should have had notice thereof.

Since a causal connection is found to exist between the difficulty and the work in which complainant was engaged, it renders further consideration of this exception unnecessary as neither appellant nor respondent could be affected thereby in either event.

Exception four is that the evidence was insufficient as a matter of law, to sustain an award for the claimant. Under the Workmen's Compensation Act, whether there is sufficient evidence to support award of Industrial Commission is strictly a matter of fact and since the Supreme Court is an appellate court it is limited to deciding questions of law. This court can only review the facts to determine whether or not there is any competent evidence to support the findings of the fact-finding body. If there is, this court is without power to pass upon the force or effect of such evidence.

*Murdaugh v. Robert Lee Const. Co.,* 185 S. C., 497, 194 S. E., 447; *Phillips v. Dixie Stores,* 186 S. C., 374, 195 S. E., 646; *Rudd v. Fairforest Finishing Co.,* 189 S. C., 188, 200 S. E., 727; *Buckman v. International Agri. Corp.,* 196

S. C., 153, 13 S. E. (2d), 133; *Thompson v. J. A. Jones Const. Co.,* 199 S. C., 304, 19 S. E. (2d), 226; *Buggs v. United States Rubber Co., Winnsboro Mills,* 201 S. C., 281, 22 S. E. (2d), 881; *Cromer v. Newberry Cotton Mills,* 201 S. C., 349, 23 S. E. (2d), 19; *Anderson v. Campbell Tile Co.,* 202 S. C., 54, 24 S. E. (2d), 104.

In the instant case there is evidence to support the award of the Industrial Commission. Therefore, this exception is overruled.

The court is of the opinion that the order of the Court of Common Pleas sustaining the award to the respondents was proper. and should not be disturbed. The exceptions are overruled and the judgment of the Court of Common Pleas is affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES concur.

MR. ASSOCIATE JUSTICE OXNER did not participate.