654 S.E.2d 856

**Jamar William McGRIFF, Employee, Respondent,**

v.

**WORSLEY COMPANIES, INC. d/b/a Scotchman Stores, Employer, and Crum & Forrester Insurance, Inc., Carrier, Appellants.**

No. 4314.

Court of Appeals of South Carolina.

Heard Oct. 11, 2007.
Decided Nov. 27, 2007.
Rehearing Denied Jan. 17, 2008.

106

Stephen L. Brown, Wallace G. Holland, and Russell G. Hines, all of Charleston, for Appellants.

Anthony E. Forsberg and Mark A. Mason, both of Mt. Pleasant for Respondent.

STILWELL, J.

Worsley Companies, Inc. appeals the circuit court order affirming the order of the appellate panel of the Worker's

Compensation Commission finding Jamar W. McGriff's injury compensable. We affirm.

## FACTS

On September 5, 2001, McGriff applied for a job with Worsley Companies, doing business as Scotchman Stores, at store # 98 on the corner of Remount Road and North Rhett Avenue in Charleston. In the interim between the submission of his application and his eventual hiring at Scotchman, McGriff met David W. Chennault, a neighbor of McGriff's friend. At the time of their acquaintance, both McGriff and Chennault were seeking employment and went "job hunting" together by submitting applications to various stores located on Remount Road. On December 19, 2001, Chennault submitted an application at store # 98. After submitting his application to Scotchman, Chennault was hired as a salesman for Country Fed Meats in Hanahan, South Carolina. Subsequently, Chennault assisted McGriff in securing employment with the same company. However, according to Chennault's testimony, McGriff worked at Country Fed Meats for only a short time.

## I. McGriff's Employment and Related Responsibilities

In early February 2002, McGriff accepted a position at store # 98 as a third-shift sales clerk. According to the Scotchman Standard Duty List, third-shift clerks are required to complete numerous duties outside the physical confines of the store. In particular, McGriff was expected to excel in his efforts to maintain the cleanliness of the outside premises as part of Scotchman's "Pride Ride" program. In addition, Scotchman's "New Beginning Training Manual" required sales clerks to "[a]lways keep applications on the [sales counter] and offer them to people you feel would be beneficial to Scotchman Stores."

## II. McGriff's Accident

On February 9, 2002, at around 5:00 a.m., Chennault stopped his company truck at the intersection in front of the

store, and saw McGriff outside cleaning the parking lot.[1] Having recently worked at Country Fed Meats, McGriff apparently noticed the company truck stopped at the intersection and recognized Chennault as the driver. Given the "nonexistent" traffic at the time, McGriff crossed the store's parking lot and entered the intersection to speak with Chennault. McGriff stood at Chennault's truck window approximately 12 to 15 feet from the curb of the Scotchman parking lot.

According to Chennault, McGriff entered the intersection to inform Chennault that he had been hired by Scotchman. Chennault asked McGriff whether McGriff would follow up on Chennault's application. In response, McGriff indicated he would speak with the store manager on Chennault's behalf. As he turned to go back to the store, McGriff was struck by an oncoming car.

### III. The Appellate Panel and Circuit Court Findings

Before the single commissioner, the parties stipulated to a bifurcation of the claim so that compensability alone was the subject of the initial hearing. The single commissioner found McGriff had sustained a compensable injury as his actions were not a substantial deviation from his employment and because he was acting in the interest of his employer when he left the store's premises.

The appellate panel affirmed the decision, stating:

Claimant had not abandoned his job. He was not violating any company policy. . . . There was no written prohibition against the Claimant leaving the store to clean the parking lot. Further, there was the affirmative written expectation that the Claimant would assist his employer in finding applicants he felt would be beneficial to the company.

The circuit court affirmed the appellate panel's order that found "both the reason the claimant was outside and the reason he stepped into the intersection were specifically authorized and expected by his employer; even if the location was not."

---

1. According to the testimony of Leslie Flowers, McGriff was not scheduled to work that shift but was called in due to the store being understaffed.

## STANDARD OF REVIEW

■ Generally, a reviewing court will not overturn a decision by the appellate panel unless the determination is unsupported by substantial evidence or is affected by an error of law. *Liberty Mut. Ins. Co. v. South Carolina Second Injury Fund*, 363 S.C. 612, 619, 611 S.E.2d 297, 299 (Ct.App.2005). "Substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached to justify its action." *Howell v. Pac. Columbia Mills*, 291 S.C. 469, 471, 354 S.E.2d 384, 385 (1987).

■ The question of whether an accident arises out of and is in the course and scope of employment is largely a question of fact. *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 517, 526 S.E.2d 725, 729 (Ct.App.2000). Where facts are disputed, the findings of the appellate panel are conclusive. *Etheredge v. Monsanto Co.*, 349 S.C. 451, 454–55, 562 S.E.2d 679, 681 (Ct.App.2002). However, where the facts are undisputed, the question of whether an accident is compensable under workers' compensation law is a question of law. *Grant v. Grant Textiles*, 372 S.C. 196, 201, 641 S.E.2d 869, 872 (2007). While the appellate courts are required to be deferential to the appellate panel regarding questions of fact, such deference does not prevent the courts from overturning the Panel's decision when it is legally incorrect. *Id.* at 202, 641 S.E.2d at 872.

## LAW/ANALYSIS

### I. Injury Arising out of Employment

■ Scotchman argues the appellate panel and circuit court erred in finding McGriff's injury compensable, because McGriff's injury did not arise out of his employment or occur during the course and scope of his employment. We disagree.

In order to be entitled to compensation for an injury under the South Carolina Workers' Compensation Act, a claimant must show he suffered an "injury by accident arising out of and in the course of the employment." S.C.Code Ann. 42–1–160 (Supp.2006). However, "[t]he two parts of the phrase 'arising out of and in the course of employment' are not

synonymous." *Osteen v. Greenville County Sch. Dist.,* 333 S.C. 43, 49, 508 S.E.2d 21, 24 (1998). Rather, "[b]oth parts must exist simultaneously before any court will allow recovery." *Id.* According to this court in *Eaddy v. Smurfit–Stone Container Corp.,* 355 S.C. 154, 161, 584 S.E.2d 390, 394 (Ct.App.2003) (internal citations omitted):

> The term "arising out of" refers to the origin of the cause of the accident. An accidental injury is considered to arise out of one's employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. An injury occurs within the course of employment when it occurs within the period of employment, at a place where the employee reasonably may be in the performance of his duties, and while fulfilling those duties or engaged in something incidental thereto.

■■ While an injury must both "arise out of" and occur "in the course of" employment to recover for the injury, "[t]here are circumstances when injuries arising out of acts outside the scope of an employee's regular duties may be compensable. These circumstances have been applied to: (1) acts benefiting co-employees; (2) acts benefiting customers or strangers; (3) acts benefiting the claimant; and (4) acts benefiting the employer privately." *Grant v. Grant Textiles,* 372 S.C. 196, 201, 641 S.E.2d 869, 871 (2007). Furthermore, an act outside an employee's regular duties that is undertaken in good faith to advance the employer's interest, whether or not the employee's own assigned work is thereby furthered, is within the course of employment. *Id.* at 202, 641 S.E.2d at 872.

■■ Thus, in determining whether an accident arose out of and in the course of employment, each case must be decided with reference to its own attendant circumstances. *Lanford v. Clinton Cotton Mills,* 204 S.C. 423, 425, 30 S.E.2d 36, 38 (1944). Moreover, the general policy in South Carolina "is to construe the Workers' Compensation Act in favor of coverage rather than exclusion." *Baggott v. So. Music, Inc.,* 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998).

In *Grant v. Grant Textiles,* 372 S.C. 196, 198–99, 641 S.E.2d 869, 870 (2007), the claimant, vice-president of sales for a

family-owned textile company, was traveling to a meeting with clients when he stopped to remove debris from along the highway near the entrance to the site of the meeting. Claimant was struck by a passing vehicle, and the court found his injury compensable. *Id.*, 372 S.C. at 198–200, 641 S.E.2d at 870–72. According to the court, "the full commission [of the Worker's Compensation Commission] erred by finding that the accident did not have a causal connection with [Grant's] employment. The accident would not have happened but for [his] business trip . . . to meet his employer's customers." *Id.* at 201–202, 641 S.E.2d at 872.

In the present case, the record contains ample evidence substantiating the causal connection between the conditions under which McGriff's work was required to be performed and his resulting injury. As evidenced by the record: (1) at the time McGriff entered the road to engage in conversation with Chennault, McGriff was allowed and expected to be outside; (2) McGriff was allowed and expected to solicit new employees; (3) McGriff was allowed and expected to communicate inquiries to the store manager regarding employee prospects; and (4) McGriff was acting in good faith in the interest of his employer when he entered the road to discuss employment with Chennault. There is substantial evidence in the record to support the determination that but for his employment with Scotchman, McGriff would not have entered the highway. McGriff knew the store was understaffed and knew Chennault was desirous of employment there. According to Chennault's testimony, the only thing the two discussed during their brief conversation was employment at Scotchman store # 98. Because there is substantial evidence in the record to support the findings, we cannot conclude that the appellate panel or circuit court erred in finding McGriff's injury arose out of his employment.

## II. Injury Occurring in the Course of Employment

Scotchman also contends the appellate panel and circuit court erred in finding McGriff's injury compensable because McGriff's departure from the store's premises constitutes a substantial deviation outside the course of his employment. We disagree.

 Generally, an employee need not be in the actual performance of the duties for which he was expressly employed in order for his injury to be in the course of employment. *See Beam v. State Workmen's Compensation Fund,* 261 S.C. 327, 332, 200 S.E.2d 83, 86 (1973) (noting "[i]t is sufficient if the employee is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment."). As our supreme court noted in *Gray v. Club Group, Ltd.,* 339 S.C. 173, 190, 528 S.E.2d 435, 444 (2000), "[s]ince South Carolina does not look to fault, [the employee's violation of a rule of conduct] must be a substantial deviation to remove his actions from the course of his employment, and disallow recovery of benefits." Accordingly,

> [W]hen an employee is in the performance of the duties of the employer, the fact that the injury was sustained while performing the duty in an unauthorized manner or in violation of instruction or rules of the employer does not make the injury one incurred outside the scope of employment.

*Id.* at 190–191, 528 S.E.2d at 444 (citing Arthur Larson & Lex K. Larson, *Workers' Compensation Law* § 37.02 (1999)).

The record does not support Scotchman's contention that McGriff abandoned his employment. Although he technically left the boundaries of Scotchman's premises, the fact that McGriff was outside of the store does not in and of itself violate any company rule. Furthermore, according to Chennault's testimony, McGriff was constantly glancing back toward the store during their conversation. The situs of the conversation was approximately 12–15 feet from the Scotchman parking lot, and the conversation was as brief as the time of one cycle of the traffic signal at the intersection. Thus, while McGriff may have deviated slightly from the general location of his job responsibilities, the record supports that such deviation was not so substantial as to remove him from the course and scope of his employment. Accordingly, we hold neither the appellate panel nor the circuit court erred in finding McGriff's injury compensable.

### III. Chennault's Testimony

 Additionally, Scotchman argues the appellate panel erred in relying on a hand-written affidavit from Chennault

that was previously excluded by the single commissioner as inadmissible hearsay. We disagree.

The record shows Chennault gave a statement to investigating officers the day of McGriff's accident generally indicating that he and McGriff were talking about their new jobs at the time of the accident. He apparently provided a hand-written affidavit approximately four days later. However, as the circuit court noted, "there is no mention in the [Appellate Panel's] Decision and Order of reliance upon the excluded statement, only an acknowledgment that it existed." Rather, the appellate panel only details the single commissioner's findings as to the first statement Chennault gave to police. Because the record reflects no reference to the appellate panel's reliance upon Chennault's second hand-written statement in making any determination of fact or conclusion of law, we hold the appellate panel did not err in relying on Chennault's testimony.[2]

## IV. Witness Credibility

 Finally, Scotchman maintains the appellate panel erred in finding Chennault was a credible witness while two of their witnesses were not. We disagree.

As noted by our supreme court in *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000), the final determination of witness credibility and the weight to be accorded evidence is reserved to the appellate panel. Accordingly, the findings of the appellate panel are presumed correct and will be set aside only if unsupported by substantial evidence. *Frame v. Resort Serv., Inc.,* 357 S.C. 520, 528, 593 S.E.2d 491, 495 (2004). Furthermore, the possibility of drawing two inconsistent conclusions from the evidence does not prevent the appellate panel's findings from being supported by substantial evidence. *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999).

Cross-examination of Chennault revealed he had exaggerated positive information on his employment application as well

---

2. *Sligh v. Newberry Elec. Coop., Inc.,* 216 S.C. 401, 411, 58 S.E.2d 675, 684 (1950), suggests that if an erroneously admitted document does not constitute the basis for an award, then it is harmless error. If the appellate panel's mere acknowledgment of Chennault's second statement was indeed erroneous, we find it was harmless error.

as lied about being fired from his previous job. In addition, Chennault did not reveal any prior arrests on his application although he had bee previously arrested. Nevertheless, the record shows Chennault and McGriff had a history of trying to assist one another with employment opportunities, and Chennault's initial statement to police following the accident is consistent with his more detailed deposition testimony.

Scotchman's witness, Joseph Turner, observed the accident from a nearby Food Lion parking lot. Turner indicated multiple times during his testimony that he was not "pay[ing] attention" to the specifics of the incident. Leslie Flowers, the Scotchman store manager, gave testimony regarding the company's policies and her own instructions to her employees about leaving the store that was arguably inconsistent. Based on the record, we cannot conclude the appellate panel erred in making its findings on the credibility of these witnesses.

## CONCLUSION

Based on the foregoing, we hold neither the appellate panel nor the circuit court erred in finding McGriff's injury compensable under South Carolina's Workers' Compensation Act. The decision of the appellate panel and the circuit court is accordingly

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.